## AS TO THE AWARD OF CITY CONTRACTS TO THE LOWEST AND BEST BIDDER.

HENRY H. MILLER, A TAXPAYER, v. HERMAN R. WITTER ET AL.
THE BOARD OF CONTROL, THE CITY OF CANTON AND
THE GENERAL ASPHALT PAVING COMPANY.*

Decided, September Term, 1921.

*Bids and Bidding—Broad Discretion of a Director of Public Service—*

Common Pleas Court of Stark County.

*In Determining to Whom a Contract should be Awarded—Injunction against an Award will not be Granted—Where the Petitioner is a Mere Figurehead Who is Posing as a Taxpayer.*

1. The director of public service of a city in the award of a contract has a broad discretion in determining who is the lowest and best bidder and, unless he has so abused his discretion as to amount to a fraud upon the public whom he serves, the court will not interfere with his action.

2. The maxim "He who comes into equity must come with clean hands" is applicable to one who brings an action to enjoin officials from awarding contracts, where it appears that the plaintiff taxpayer is evidently only a figurehead for an unsuccessful bidder and himself manifests no interest in the suit but is evidently merely the agent of such unsuccessful bidder.

3. By virtue of General Code, Section 4328 a director of public service of a city is the proper person to make the contract with the lowest and best bidder after advertisement for the period required, and he therefore is the officer who exercises the discretion in making the award for a contract to the "lowest and best bidder."

4. The board of control of the city, as provided by General Code, Section 4403, has the duty of approving the action of the director in making the award. The board of control after such approval authorizes the director to enter into the contract.

5. The provisions of General Code, Section 3810, that money to be derived from lawfully authorized bonds or notes sold and in process of delivery, shall for the purpose of the certificate that money for the specific purpose is in the treasury, be deemed in the treasury in the appropriate fund, are complied with when an option for the sale of bonds has been accepted and earnest money paid on the same and the auditor of the city is engaged in the process of delivery of the same, and having made his

*Parties submitted to decree.

certificate under General Code Section 3806' that such money required for such contract was in contemplation of law in the treasury as provided by General Code, Section 3810.

*Amerman & Mills,* for plaintiff.

*Clarence A. Fisher,* city solicitor, for defendants, city of Canton and board of control.

*John T. Blake,* for defendant, the General Asphalt Paving Company.

KRICHBAUM, J.

Equity looks to the substance of the transaction, and in this light the court will examine and decide the matter before it.

The petition, after alleging proceedings of facts leading up to the transactions complained of, and which are admitted by defendants, charges—

1. That notwithstanding the bid of the National Construction Company of Canton, Ohio, was regular and complied with the law, and was lower than that of the General Asphalt Paving Company, the board of control of the city of Canton, on the 20th day of May, 1921, met, and accepted the bid of the General Asphalt Paving Company, and authorized the director of public service, to contract with it; the said director of public service did, on the 26th day of May, enter into a contract for the paving of South Market street, and on the 27th day of May entered into contracts for other streets in the city of Canton.

2. That said acts violated the law, and constituted an abuse of discretion such as amounted to fraud upon the city and its taxpayers—alleging the following reasons why said acts were a violation of law and abuse of discretion: (a) the General Asphalt Company was not the lowest and best bidder; (b) That by favoring said the General Asphalt Paving Company, the city will lose $26,000; (c) That the certificate of the auditor, Samuel E. Barr, to the effect that money was in fund for said improvements, was false in this, eo-wit: that no money was in the treasury, nor were the bonds lawfully sold and in process of delivery; (d) That H. A. Smith, director of public service, secretly entered into a verbal agreement with the General Asphalt Paving Company, whereby he promised

to award the contract to it, in consideration that it purchase bonds of the city, and that II. R. Witter, mayor, and M. J. Braucher, director of public service, assented secretly to said verbal agreement and directly influenced the board of control of the city of Canton to award contracts to the General Asphalt Paving Company in fraud of the taxpayers of the city of Canton.

It is a trite maxim in the law that he who comes into a court of equity, must come with clean hands and must do equity and stand ready to do equity.

What is the status of the National Construction Company of Canton, the rejection of whose bid it is alleged has damaged the taxpayers of the city of Canton to the amount of $26,000.?

There is no allegation in the petition of its incorporation—none that it is a partnership; the proof shows that it is not in existence—there is no such company—it is *in nubibus*—in the clouds—in the future—yet to be. It has no equipment, only the option on one; it has no president, only a proposed prospective one. How could it make a valid bid—how could a valid contract be awarded it? It has no manager; Mr. Downs was its prospective manager. This intangible thing, without entity, as vague as Melchizedek—without beginning or end of days—attempted to submit a bid through Mr. Downs, its prospective president, to the officers of the city of Canton for the furnishing of certain material and the performance of certain work relating to the improvement of its streets. It appears that the plaintiff in this case, the supposed taxpayer, is a brother-in-law of Mr. Downs and with presumably full knowledge of these facts, is standing here for the interests of the city of Canton. This proposed corporation held itself out to the city authorities and to the public as a *bona fide* company to be responsible and able to contract.

Is this good faith—is this coming into court with a clean slate—is it good faith in the taxpayer who comes into court on behalf of himself and the welfare of other taxpayers of Canton, if he knew or ought to have known that the National Construction Company of Canton was not in existence; ought he to take up the cudgel of a nor entity on behalf of the tax-

payers of the city of Canton? Is he in court in good faith—with clean hands—ready to do equity? If certain defendants in this case have abused their discretion in awarding a contract to the General Asphalt Paving Company, and acted fraudulently, what is the converse of the proposition? If they had awarded this contract to the National Construction Company, which was without any existence, without responsibility—would they not have been guilty of gross indiscretion?

In the case of *Roberts* v. *Columbus*, 15 O. N. P. (N. S.), 297, Judge Bigger, for whose opinion I have high regard, decided that "official discretion would be interfered with by the courts only where it is apparent that the official clothed with the discretionary power has so abused it, and has so acted that his act amounts to a fraud upon the public whom he serves. A taxpayer who is evidently only a figurehead for the unsuccessful bidder will not be heard to complain so long as he rests his claim for relief upon the fact that the officer awarding the contract, exceeded his authority in splitting it up among four persons against only one of whom is relief sought."

I cite this case as being one especially applicable on the question as to the good faith of a taxpayer who brings such an action. The court in its opinion, page 300, uses this language:

"This leads me to suggest, although I would not undertake upon this preliminary hearing to absolutely decide it, if the decision turned upon that, that there is much in this case that points strongly to the conclusion that this taxpayer is but a figurehead by which an unsuccessful bidler seeks to enjoin his successful rival, and the court will not lend its aid to any such effort. During a two days' hearing this plaintiff never appeared or manifested any interest in the case, while the agent of the Fabric Fire Hose Company was the only witness who did appear to manifest any interest in the suit."

The court did not see the plaintiff taxpayer in this case, so the court could hardly reconcile himself to the belief that this plaintiff was in court in good faith.

As to the first charge, if the court's view is correct, that the bid of the National Construction Company was a mere phantom, then it is not true, as claimed in the petition, "that its bid was regular and in compliance with the law" and if not

regular, and a mere phanton, the charge that it was rejected can have no force as ground for fraud.

As to the second charge, that the acceptance of the bid of the General Asphalt Paving Company amounted to a fraud, and involved an abuse of discretion—this falls of its own weight, and this is apparent because the elimination of the National Construction Company's bid, according to the proof adduced in this case, makes the General Asphalt Paving Company substantially the lowest bidder.

Coming now to consider the alleged grounds of abuse of discretion, as set forth in the plaintiff's amended petition, and as hereinbefore detailed—

First—that the General Asphalt Paving Company was not the lowest and best bidder, as observed before, if the National Construction Company was not a regular and legal bidder, and had no existence, then, according to the proof adduced in this case, the General Asphalt Paving Company was substantially the lowest and best bidder, and the court so finds. But suppose, for the sake of argument, that the bid of the National Construction Company was regular and according to law—it is in proof that service director Smith awarded the contract to the General Asphalt Paving Company because it was the lowest and best bidder on each of the respective streets in question, and it is the opinion of the court that the Board of Control has not, within its province the power or authority to determine who is the lowest and best bidder—that board simply approves the finding of the director of public service as to who is the lowest and best bidder. Section 4403 of the General Code, provides, among other things, "no contract in the department of public service in excess of five hundred dollars, shall be awarded except on the approval of the board of control, which shall direct the director of the appropriate department to enter into the contract." Section 4328 of the General Code of Ohio makes provision that "the Director of Public Service shall make a written contract with the lowest and best bidder after advertisement, etc."

From the testimony adduced in this case, the court finds that the General Asphalt Paving Company, was the lowest and best bidder and the court does not consider it material as to what findings the board of control made through its rec-

ords. It is sufficient, if it gave authority to the director of public service to enter into each of these specified contracts with the General Asphalt Paving Company. Plaintiff's Exhibit "10" plainly directs the director of public service to enter into these specific contracts. The action of the board of control does not constitute any original determination of who is the lowest and best bidder; it does not seem to be authorized by the statute to determine who should be accepted and who should be rejected. The board's authority is simply to approve the action of the director of public service and direct him to enter into the contract for the city.

Coming now to the charge of the falsity of the auditor's certificate; it is claimed by counsel for plaintiff on authority of *Village* v. *Diekmeier*, 79 Ohio St., 323, that this certificate does not conform to the statute; but, it will be observed that in that case the certificate was held invalid because it did not specify the amount required by the contract. The certificate in the case at bar specified the amount for the streets named and says that it exceeds the engineer's estimated cost.

Moreover on every one of the proposed contracts submitted in evidence, the exact amount is specified and each distinctly states that the sum is in process of collection as provided by General Code, 3810. These certificates attached to the contracts, certainly meet the requirements held necessary by the decision in 79 Ohio State, 323. These certificates attached to the various contracts, provide further that the money was not appropriated for any other purpose; and are signed by the auditor as of May 20, 1921. The court is of opinion that all of these certificates meet the requirements of the statute.

It is argued further that the certificate is false in that no money is in the treasury to the credit of the fund for the improvements, nor were bonds lawfully sold and in process of delivery. The testimony shows that the bonding company, in its original bid on bonds of the city, submitted as a part of its bid, an option to purchase bonds for the city's part of the street improvements in question in this case; Exhibit "12" shows that with the approval of the finance committee, Stacey & Brown's option was accepted and subsequently extended with the approval of the council and finance committee to May 17, 1921. Auditor Barr testified that before the ex-

piration of said extension the said bonding company verbally exercised said option by notice directly and specifically to him. Said auditor further testified that he had in his possession several thousand dollars deposited by the bonding company as earnest money at the time of the submission of its original bid, of which the option was a part; that he considered said amount covered both their bid and their option and this court does not see why the auditor did not have a right to consider it as earnest money; but, conceding that he did not have this right, and that no earnest money was on deposit, the option was in writing, and an option in law is an enforcible contract. It is certainly a memorandum of writing, depending for its consummation on notice, and the court has found numerous authority to the effect that such notice may be either oral or in writing. Section 8384 of the General Code has to do with the enforcement of the contract —it does not make the contract invalid. This court holds that the option itself is a sufficient memorandum to meet the requirements of that section of the General Code of Ohio. The burden is upon the plaintiff to show that the bonding company has not purchased the bonds or that it has not executed its option by proper notice. The court finds from the testimony that these bonds were sold and in process of delivery as appears from the further testimony of the auditor. The auditor certainly understood and believed that the sale was made; he based his certificate on that belief—in good faith— and his certificate is true and valid and not false, and this is particularly so as to the certificates on the several contracts in evidence.

As to the last charge made by plaintiff in the petition, that H. A. Smith, director of public service, secretly entered into a verbal agreement with the General Asphalt Paving Company, whereby the said H. A. Smith promised to award the contracts to the General Asphalt Paving Company provided this company purchased the bonds; that the General Asphalt Paving Company thereupon and under these conditions, agreed to buy the bonds; that said agreement was secretly made known to Herman R. Witter, mayor of the city, and Milton J. Braucher, director of public safety, and directly influenced the board of control in awarding the contracts to the General

Asphalt Paving Company, to the fraud and injury of the other bidders and to the fraud and injury and against the rights of the petitioner and the city of Canton.

There is nothing in the proof to sustain any of these charges. In *State* v. *Board*, 81 Ohio State, 218, it was held by the Supreme Court:

"The proceedings of the board of public service in the advertising for bids and the adoption of a resolution defining who is the lowest and best bidder, is not the making of a contract, but is merely preliminary to the making of the written contract provided for by the statute, and such contract is the only one the board is by the statute authorized to make."

It is further held in *Ohio, ex rel. Walton et al.*, v. *Herman et al.*, 63 Ohio State, 440, as well as 81 Ohio State, 218, already cited, that under the statute which authorizes the director of public service or other corresponding public officials to make a contract with the lowest and best bidder, such official has a wide discretion in determining who is the lowest and best bidder, and unless he is shown to have been guilty of fraud, or to have grossly abused his discretion, the courts will not attempt to interfere with his exercise of discretion.

The court further held in 81 Ohio State, 218, that public officials may take into consideration the honesty and fidelity of the lowest bidder; and it is further held in *Yaryan* v. *City of Toledo et al.*, 28 C. C., 259; 8 C. C. (N. S.), 1, affirmed by the Supreme Court of Ohio in 76 O. S., 584, that public officials authorized to make contracts with the lowest and best bidder are not limited to a mathematical computation as to who is the lowest responsible bidder, but may go beyond the price bid and the character of the bidder and accept the best proposition offered, considering quality, feasibility and efficiency of the thing to be furnished, the qualification and responsibility of the bidder, and the price proposed in view of all the other considerations.

The court does not feel that there is any proof at all sufficient to warrant the interference by injunction with the completion of these contracts; and for the reasons heretofore given, the application for the injunction is denied and the petition of the plaintiff dismissed.